JOHN BURNET ET AL. *v.* SAMUEL BOYD ET AL.

1. MORTGAGE. *Not under seal. Power of attorney unsealed. Good in equity*
   Even prior to the operation of the Code of 1880, an unsealed mortgage made in
   pursuance of an unsealed power of attorney, though not valid as a legal
   mortgage, was good as an equitable mortgage.

2. SAME. *Scope of power of attorney. Mortgage under. Case in judgment.*
   B., E. and F. composed the firm of B. & Co., commission merchants. B. and E.
   executed to F. a power of attorney to borrow money for the use of the firm
   "and to sign and indorse all note or notes representing the sum or sums thus
   borrowed or to be borrowed, and to secure the payment and reimbursement
   thereof by granting a special mortgage on the whole or a part of the real
   estate, lands and tenements belonging to our said firm or standing in its name."
   F. then procured S. B. & Co., another firm of commission merchants, to give
   their notes as accommodation makers, payable to the order of B. & Co., who
   negotiated the same with several banks and got the money thereon, and used
   it in their business, a part being applied to previously incurred liabilities. In
   order to procure the renewal of such accommodation paper F. for himself
   and as the attorney in fact of B. and E. gave to S. B. & Co., their promissory
   notes for the amount of such renewals, and executed a mortgage on certain
   real estate to secure the payment of the notes to S. B. & Co. The latter firm
   were compelled to pay out a large amount of money on their renewal notes
   for the benefit of B. & Co., who failed to pay anything on their notes to S. B
   & Co. A bill was filed by S. B. & Co., to foreclose their mortgage. *Held*,
   that under the power of attorney, F. was authorized to borrow money to meet
   the pre-existing liabilities of his firm; and the mortgage given to secure S.
   B. & Co., is good, in equity, to secure them against the loss of the money
   which they were compelled to pay out on their notes made for the accommo-
   dation of B. & Co., just as if they had originally advanced the money.

3. SAME. *Shown to be equitable. Treated as legal. Chancery. Practice.*
   Where it is sought in a Court of Chancery to enforce as a mortgage an instru-
   ment which the facts stated in the bill show to be an equitable mortgage
   merely, it will not avail for the defendant to object on demurrer that the
   complainant's bill treats it as a legal mortgage and as such it is invalid.

4. CHANCERY PRACTICE. *Bill. Specific and general prayers. Conjunctive and
   disjunctive conjunctives.*
   Where a bill prays for specific relief "and" for general relief, a Court of
   Chancery will not be limited to the specific relief and relief of the same char-
   acter on the ground, that the prayer for general relief is conjunctively instead
   of disjunctively added.

APPEAL from the Chancery Court of Claiborne County.

Hon. H. S. VAN EATON, Chancellor.

The bill in this case was filed on the 24th of June, 1882, by
Samuel Boyd and Richard Herrick, surviving partners of the

firm of Samuel Boyd & Co., against Jacob M. Frankenbush, F. C. Englesing and John Burnet, composing the firm of J. Burnet & Co., and others. The allegations of the bill are in substance as follows: On and from the 10th day of June, 1876, to the 6th of June, 1878, inclusive, the above named defendants, were copartners and were seized and possessed of a large real estate in Mississippi, constituting several valuable plantations, which was acquired in the course of their business as commission merchants in New Orleans, La. In order to meet the liabilities of the firm and to carry on their business, on the 10th of June, 1876, John Burnet and F. C. Englesing executed .to Jacob M. Frankenbush a power of attorney, not under seal, authorizing him to use the firm name in signing or indorsing notes for any money which he might borrow for the purposes stated, and to secure the payment thereof by mortgaging the whole or any part of the real estate belonging to the firm and situated in Mississippi. Between the 10th of June, 1876, and the 6th of June, 1878, Samuel Boyd & Co., who were also commission merchants in New Orleans, La., had procured for J. Burnet & Co., to meet their firm liabilities and to conduct their business, more than $20,000, for which Samuel Boyd & Co. had given their permissory notes as accommodation makers, from time to time, payable to the order of J. Burnet & Co., who after indorsing the same, got them cashed at different banks upon the credit enjoyed by the makers thereof. These notes of Samuel Boyd & Co. were outstanding on the 6th of June, 1878, some having matured and the others being near maturity, when J. M. Frankenbush proposed that if Samuel Boyd & Co. would arrange the liability of J. Burnet & Co. on such notes by renewing- the same, then the latter firm would make their four promissory notes payable to their own order and indorse and deliver them to Samuel Boyd & Co., which last mentioned notes should become due on the 1st of April, 1879, and be secured by a mortgage upon the lands which J. Burnet & Co. owned in Mississippi. The proposition was agreed upon and

four notes for amounts aggregating $20,000 were made, dated 6th of June, 1878, payable to the order of themselves, signed by J. M. Frankenbush and J. Burnet and F. C. Englesing "per J. M. Frankenbush," and indorsed in blank by the same parties. These notes, which are exhibits B, C, D, and E, to the bill, were delivered to Samuel Boyd & Co., and to secure their payment, Frankenbush, for himself and as the attorney in fact of Burnet and Englesing executed to Boyd & Co. a mortgage on the lands owned by J. Burnet & Co. in this State and acquired as above stated, which mortgage was not under seal. The mortgage was signed in the same manner with the notes. Then Boyd & Co. renewed their notes as accommodation makers for J. Burnet & Co. to the extent of $20,000, as agreed upon.

After the renewal of their notes by Boyd & Co. some payments were made thereon by Burnet & Co. and some by Boyd & Co., but on the 25th of April, 1881, there still remained due on these notes $13,162, and at the solicitation of Burnet & Co., Samuel Boyd & Co. gave their three renewal notes for this amount, due on the 25th of April, 1881, as accommodation makers for Burnet & Co. These notes, which are exhibits G, H and I to the bill of complaint, were payable to J. Burnet & Co. in liquidation, and indorsed in the firm name " by J. M. Frankenbush." On the 27th of May, 1882, Samuel Boyd & Co. were compelled to pay these last mentioned notes to the several banks by which they were held.

The prayer of the bill was for an account to ascertain the amount due the complainants on account of their payments made for the benefit of J. Burnet & Co., and for a decree directing a sale of the land embraced in the mortgage to the complainants, in the event of the failure of the debtors to pay the amount due within a specified time. Two of the defendants, John Burnet, of the firm of J. Burnet & Co., and Amos Burnet, who claimed some interest in the land mortgaged, demurred to the bill on grounds which are sufficiently indi-

cated in the opinion of the court. The demurrer was over-ruled and they appealed.

*L. M. Baldwin* and *Stephen Thrasher*, for the appellants.

1. One of the grounds of demurrer upon which we rely is that Frankenbush exceeded the authority conferred upon him by the power of attorney: (1.) It does not authorize him to secure by mortgage those who assist J. Burnet & Co., with their names and credit in borrowing money, but only those from whom they actually borrow the money, and it only authorizes him to borrow money for the future use of the firm, in its business, and not to secure money already borrowed. (2.) The power of attorney does not authorize J. M. Frankenbush to make the individual notes of John Burnet and F. C. Englesing to any person, or persons, or corporations whatever for borrowed money for the use of the firm, or for any other purpose whatever. (3.) The power of attorney does not authorize J. M. Frankenbush to contract that the firm of J. Burnet & Co. would deliver the individual notes of John Burnet and F. C. Englesing to any person whatever for borrowed money, or as collateral security for borrowed money, and to secure the same, etc., and he had no power afterwards to execute the said contract. It is a well defined principle of law, that a person dealing with an agent is bound to look to the extent of that agent's powers. *McLemore* v. *Hawkins*, 46 Miss. 715. When a person deals with another, knowing that the other is acting under a delegated authority, it is his own folly, if he does not inform himself of the extent of the delegated authority. In such cases, the principal is only bound to the extent of that authority. *Dozier* v. *Freeman*, 47 Miss. 647. *Co-operative Life Association* v. *McConnico*, 53 Miss. 233. The procuration by Frankenbush, the attorney in fact, of the promissory notes of April 25, 1881, executed by complainants, were not authorized by the power of attorney, as they were made payable to J. Burnet & Co., in liquidation, and by said attorney in fact indorsed to the respective banks, under the signature of J. Burnet & Co., in liquidation,

per J. M. Frankenbush. This accommodation paper was made by complainant long after April 1, A. D. 1879, the time agreed upon to make and renew the said accommodation paper, and for which the four promissory notes of the individual members of the firm were given, and deed of mortgage executed to secure; the same being collateral security to save harmless the complainants. Frankenbush could not as a partner have made John Burnet liable as an indorser of this paper, after the dissolution of the firm of J. Burnet & Co., even though he and Englesing had given Frankenbush a special power to settle the copartnership business. *Kilgour* v. *Finlyson*, 1 Black., H. 155. Under the pretended power of attorney, set forth in exhibit A, the attorney in fact, Frankenbush, did not have the power to execute the individual notes of the members of the firm of John Burnet & Co., and he did not have the power to contract with the complainants, that the firm of J. Burnet & Co. would deliver the four joint individual notes of the members of the firm, and secure the same by mortgage, etc. See Story on Ag. 562–373; Ewell's Evan on Ag. 109–111; *Rossiter* v. *Rossiter* 8 Wend. 499; *Nixon* v. *Hyserott*, 5 Johns. 57; *Gibson* v. *Colt*, 7 John. 390. In Dunlap's Paley on Ag. (4th Am. ed.) marg. p. 192, the author says that all written powers, such as letters of attorney, or letters of instruction, receive a strict interpretation, the authority never being extended beyond that which is given in terms, etc.

2. Another ground of demurrer is that the power of attorney and deed of mortgage are unsealed instruments, and the averments therein as to the seals are argumentative, vague and uncertain. Code of 1871, sects. 1895 and 1896, declare that conveyances of real estate executed by an attorney in fact shall be binding on the principal, provided the attorney has been appointed by some writing duly executed and acknowledged by the principal, in the manner a conveyence of such property is required by law to be executed, and acknowledged or proved. Sect. 2302 requires that these instruments shall

be sealed and delivered. Sect. 2308 says that no deed of conveyance or other written instrument concerning the sale of land shall be admitted to record unless the execution thereof be acknowledged or proved, etc. Sect. 2310 prescribes the form and manner of acknowledgment or proof. That the power of attorney, and the deed of mortgage, are unsealed instruments and are inoperative and void, see *Davis* v. *Brandon et al.*, 1 How. (Miss.) 154; *Alexander* v. *Polk*, 10 Geo. 737; *Martin* v. *The State*, 56 Miss. 108; *Jackson* v. *Wood*, 12 Johns. 73; *Wadsworth* v. *Wendall*, 12 Johns. 355; *Hamilton* v. *Hamilton*, 27 Ill. 158. See, especially, *Day* v. *Day*, 58 Miss. 318.

3. The complainants file their bill to enforce a legal mortgage, and they treat it as a deed of mortgage, averring again and again all the way through the bill that it is an indenture and a mortgage; they pray that an account may be taken, and that a short day for payment may be fixed by the court, and in default of payment, for a decree of sale, and that all persons claiming by or through defendants may be forever barred and foreclosed of their equity of redemption in the said premises, and for other further and different relief; now if they offer the pretended mortgage as a deed, it is no evidence because it is not executed according to law. *Alexander* v. *Polk*, 10 Geo. 479.

4. The general prayer of the bill is not in the disjunctive; it is not disjoined from the prayer for specific relief; and under it they are only entitled to the relief which they seek in their bill, and they can have no relief inconsistent with the facts stated in the bill. *Pleasants* v. *Glascock*, 1 Smed. & M. Ch. 17; *Cotton* v. *Ross*, 2 Paige Ch. 396.

*Stephen Thrasher*, argued the case orally.

*J. D. Vertner* for the appellees.

1. It is insisted upon demurrer that the power of attorney did not "authorize Frankenbush to secure those who assisted J. Burnet & Co., with their names and credit, in borrowing money, but only those from whom the firm actually borrowed

money." According to the rule laid down by the elementary writers, the power "to borrow money." empowered the agent to raise it by borrowing the accommodation paper of complainants' firm. See Story on Ag. 57–60, also pp. 77, 105, 106, 124 and 126; 7 Johns. Ch. 34, 35. We submit and insist that, even had the bill not alleged ".that the raising of money by means of such accommodation paper was customary with cotton factors, and especially with the firm of Burnet & Co.," still the execution of these mortgages would be within the scope of this power. For, as in *Viser* v. *Scruggs*, 49 Miss., he who loaned money to a married woman, with which she purchased articles for which she could legally contract, was deemed and treated as having furnished such articles, and her mortgage for the money loaned, held good *pro tanto;* and, as in *Harris* v. *Pitfield*, 1 P. Wms. 559, he who loaned money to an infant with which the infant paid for necessaries furnished by a third party, was, in equity, treated as having furnished the necessaries and the infant's estate held liable, *pro tanto*, for the borrowed money; so, here, by parity of reasoning, Boyd & Co. having loaned to Burnet & Co. their accommodation paper (which the bill alleges was the equivalent of cash) by which money was realized—should now be treated as having loaned the money, that is, to the extent of their payment of said accommodation paper.

2. It is insisted that "the power of attorney only authorized Frankenbush to secure money borrowed for the future use of the firm, and not to secure money already borrowed." The evident intent of this power was to enable the agent and partner of the principals to provide means for the conduct of the firm business. Of this there can be no question. And it will not be denied that the provision of means for satisfying outstanding liabilities, is, if anything, more important to a commercial firm than providing funds for future ventures. Bearing in mind these premises as to the power, in connection with the fact that Frankenbush could bind his partners for money borrowed for firm use, without express grant from them,

then, even though some of the accommodation paper secured by this mortgage may have been loaned by Boyd & Co. to J. Burnet & Co. anterior to the date of the power, it would, nevertheless, be within the scope of this power for Frankenbush to " execute and indorse notes representing all sums thus borrowed," and to secure such notes, as well as to execute and secure notes representing the sums borrowed after the date of said power; provided only such previous borrowing was for firm use.

3. Another ground of demurrer is that the notes of April 25th 1881 (set forth as exhibits G, H and I), are made payable to J. Burnet & Co., in liquidation and that it does not, therefore, appear that they were for the use of said firm and its business." They are not being sued upon these notes; nor were these notes a novation of the pre-existing obligation of Burnet & Co. to Boyd & Co. under their contract of indemnity against the failure of the former firm to meet and provide for said accommodation paper. The basis of this action is the contract of indemnity referred to. These notes (exhibits G, H and I), were but the memoranda of the sums due April 25th, 1881, on said original accommodation paper; and, being paid, become now the measure of complainants' damages under said contract of indemnity — and fix the amount due on said mortgage notes of June 6th, 1878. "A mortgage protects the debts secured by it, so long as it can be traced through successive renewals." *Whitaker* v. *Dick*, 5 How. 296; *Schumpert* v. *Dillard*, 55 Miss. 348–364 1 Hill on Mort. p. 475, sect. 3; *Morse* v. *Clayton*, 13 Smed. & M. 375.

4. It is further objected that the " mortgage and power under which it was made are unsealed instruments." But, whether they were sealed or not, we insist that complainants have an equitable mortgage under this power of attorney. The suggestion of counsel, that it is sought by the bill to treat this security as a legal mortgage, is not warranted by any allegation of the bill. Indeed, the usual averment which fol-

lows the charge of default in payment of the debt secured, to-wit: " That thereby, the title of complainants to the property mortgaged had become absolute at law," is omitted from their bill, and purposely so.   A mortgage is but a security for a debt, and whether equitable or legal, receives like treatment in a court of equity.   The doctrine is well established that an agreement in writing to give a mortgage, or a mortgage defectively executed, without seal, or an imperfect attempt to create one, will create a mortgage in equity.   *Dagett* v. *Rankin*, 31 Cal. 321 ; 1  Am. Ld. Cas. 510 ; 1 Paige 125 ;  33 Cal. 389 ; 1 Jones on Mort. 121, 163, 169 ; 8, Iowa, 358 ; Willard's Eq.  298–422 ; 49  Mo. 315 ;  54  Mo. 415 ;  57  Mo.  214 ;  58 Mo. 134.

*J. D. Vertner*, also made an oral argument.

Cooper, J., delivered the opinion of the court.

The averments of the bill are sufficiently definite to advise the defendants of the nature, character and amounts of the advances of money made by complainants on behalf of the firm of Burnet & Co.   It is not necessary to set forth the antecedent transactions conducted by Frankenbush, one of the members of defendants' firm, and from which arose the liability of the firm to third persons, which was discharged by the complainants.

The letters of attorney, though not under seal, authorized Frankenbush to make a contract, good in equity as a mortgage, on the lands therein described, and the mortgage, though not valid as a legal mortgage, because not under seal, is good in equity, and will be enforced according to the intention of the parties.

It is said by the defendants that while by the unsealed power Frankenbush was authorized to borrow money for the firm of Burnet & Co., and to secure its repayment by the execution of a mortgage upon its real estate, yet no authority was given to him to mortgage the lands to pay debts already contracted, and that by their bill the complainants show the fact to be

that the debt or liability which Frankenbush attempted to secure by mortgage was in existence at the time the mortgage was made.

We are not called upon now to determine whether a power of attorney by which authority is conferred upon one partner to convey the real estate of the firm is to be construed and measured by the same rigid rules as those which apply in cases where a power conferred is to be exercised over property owned by the grantor, nor the extent to which a more liberal construction would be indulged. It is sufficient to say in this case that, under the facts disclosed in the bill, Frankenbush might, within the terms of the power, have executed a mortgage to secure the complainants against loss by reason of their liability as accommodation makers of paper upon which Burnet & Co. procured money after the execution of the letters of attorney.

By the terms of the letters, Frankenbush was authorized to borrow money for his firm (a power which he had without regard to the letters), '' and to sign and indorse all note or notes representing the sum or sums thus borrowed, or to be borrowed, and to secure the payment and reimbursement thereof by granting a special mortgage on the whole or a part of the real estate, lands and tenements belonging to our said firm, or standing in its name.''

After the execution of these letters of attorney, Frankenbush, in order to obtain money to be used by his firm — some of it, probably, in discharge of debts due by it for which complainants were then bound — procured complainants to sign, as accommodation makers, a number of promissory notes, which were discounted and their proceeds applied to the use of his firm; to secure them against loss by reason of their aid thus given to his firm, the mortgage was given.

Complainants have been forced to repay to the holders of the paper the sums advanced by them to Burnet & Co., and in the eye of a court of equity, occupy the same position as if they had originally advanced the money, and are entitled to

the protection of the security on the faith of which they assumed the liability incurred by them. The form of the notes executed by Frankenbush to Boyd & Co. (Exhibits B, C, D, and E), and of the notes executed by Boyd & Co., as accommodation makers, in favor of Burnet & Co., in liquidation (Exhibits F, G, and H) is not material. The notes (Exhibits B, C, D, and E) need not have been executed at all; it is not pretended that they are due from the makers according to their tenor. Their existence may complicate the transactions, since they are not the evidence of any debt, nor were they intended so to be. It would have been simpler and better if the mortgage had been made directly for the purpose of securing to Boyd & Co. the repayment of any sums which they should be compelled to expend in discharging the debts for which they were bound as accommodators for Burnet & Co., for at last it comes to that, and the notes executed by Frankenbush add nothing to the strength of their claim — they does not, on the other hand, detract at all from it — *utile, per inutile non vitiatur.* The notes (Exhibits F, G, and H) were given to Boyd & Co., presumably, after the dissolution of the firm of Burnet & Co. If they were the cause of action, the position of counsel for appellants, that Frankenbush could not bind the firm by his indorsement after its dissolution, might be sustained. But the bill distinctly avers that the amounts which Boyd & Co. paid were on account of debts due by Burnet & Co. on the 6th day of June, 1878, and they are evidenced by notes of which Boyd & Co. were the accommodation makers. It is this allegation of the bill which gives validity to complainant's demand. If such payments were in fact made by them — no matter when, or where, or how — whether by check, on their bank, or in cash, or by the execution of other notes as renewals of the first, the original obligation of Burnet & Co. remains unchanged and enforceable. It is the substance, not the form, that is to be regarded.

In response to the argument that the court cannot treat the mortgage as good in equity, because the complainant had

treated it as a legal one, it is sufficient to say that all the facts are stated, and from them the mortgage is good in equity though not at law ; and to the objection that no other relief can be granted than that specifically prayed, or of the same character, because the prayer for general relief ·is in the conjunctive, instead of the disjunctive, we have only to reply that the day has long passed in which such objections can be regarded in courts administering justice.

The decree is affirmed, and sixty days given to answer.